******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN SLATER *v*. COMMISSIONER OF CORRECTION
(AC 35897)

DiPentima, C. J., and Mullins and West, Js.

*Argued December 2, 2014—officially released July 14, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*David V. DeRosa*, assigned counsel, for the appellant (petitioner).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence D. Mariani*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, John Slater, appeals from the judgment of the habeas court denying in part his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly (1) rejected his claim that the failure of his trial counsel to raise the statute of limitations as an affirmative defense at trial constituted ineffective assistance and (2) rejected his claim that the failure of his appellate counsel to adequately investigate his claim that he was substantially prejudiced by the more than six year delay between the incident and his arrest constituted ineffective assistance.[1] We affirm the judgment of the habeas court.

In the petitioner's direct appeal, our Supreme Court summarized the underlying facts as follows: "On May 6, 1997, in the city of Waterbury, the [petitioner] forced the victim into a van with a knife, which he used to poke her in the hand. The [petitioner] first forced the victim to perform oral sex on him. The [petitioner] then had vaginal intercourse with the victim. Shortly thereafter, Barry Kilcran and Gary Jones, who were at Kilcran's house at 129 Warner Street in Waterbury, heard the victim coming down the street screaming and crying that someone had tried to rape her. The victim approached the two men in a disoriented and hysterical state and told them that 'a black male with a big knife' had raped her. Kilcran and Jones brought the victim inside the house and telephoned the police.

"The police thereafter transported the victim to the hospital, where she was admitted to the emergency room. Catherine Judd, a registered nurse, found the victim trying to hide in a corner of the emergency room, crying and upset. The victim informed Judd that she had been raped. Mickey Wise, a physician, then examined the victim and administered a rape kit, with which he took a vaginal swab and collected other physical evidence. The victim informed Wise that an 'unknown person forced her into his car and . . . forced her to perform oral sex on him, then vaginal intercourse. [He] [e]jaculated in her vagina . . . . He had a large knife with which he poked her on the right hand.'

"No timely arrest was made in connection with the alleged assault. On or about July 31, 2001, however, the police learned that the DNA obtained from the victim's rape kit matched that of the [petitioner]. At that time, Waterbury police detective Anthony Rickevicius went to see the victim, but did not show her a photograph of the [petitioner]. Rickevicius then applied for a search warrant for a blood sample from the [petitioner], which was granted, and the police took the [petitioner's] blood sample on February 8, 2002. Before the confirmation results arrived, however, the victim died of causes unrelated to the assault. On or about August 18, 2003, the

police questioned the [petitioner] about the incident and showed him a photograph of the victim. At that time, the [petitioner] signed a statement attesting that he did not know the victim and had not had sexual relations with her, 'forced or consensual.' The [petitioner] subsequently was charged with sexual assault in the first degree and kidnapping in the first degree in October, 2003." (Footnote omitted.) *State* v. *Slater*, 285 Conn. 162, 166–67, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

The sexual assault of the victim occurred on May 6, 1997. At the time the crime was committed, the applicable statute of limitations for the Class B felony of sexual assault in the first degree was five years pursuant to General Statutes § 54-193 (b).[2] However, on May 16, 2000, General Statutes § 54-193b[3] became effective, and created a twenty year statute of limitations for the prosecution of a sexual assault offense that was reported to police within five years of its occurrence and where the identity of the perpetrator could be established by DNA. There was no statute of limitations for the Class A felony of kidnapping. See General Statutes (Rev. to 1997) § 54-193 (a). An arrest warrant for the petitioner was not issued until October 23, 2003, a period of six years and five months after the crime had occurred, and the petitioner was not arrested on that warrant until October 27, 2003.

Before the petitioner's criminal trial, his trial counsel filed a motion to dismiss both charges. Trial counsel argued that the court should dismiss the Class B felony of sexual assault because the application of the new twenty year statute of limitations violated the ex post facto clause of the United States constitution and the five year statute of limitations expired prior to the issuance of the arrest warrant or the arrest of the petitioner. Trial counsel also argued that the court should dismiss both charges due to the delay in the arrest of the petitioner. He argued that the delay resulted in actual substantial prejudice to the petitioner and was wholly unjustified.[4] The trial court, *Holden, J.*, held an evidentiary hearing on the motion before denying the motion by oral decision on December 13, 2004. Trial counsel did not reassert the statute of limitations claim as an affirmative defense at trial.

Following a jury trial, the petitioner was found guilty of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). On February 10, 2005, the trial court, *Holden, J.*, sentenced the petitioner to concurrent fifteen year terms of imprisonment with five years of special parole. The judgment of conviction was affirmed on direct appeal. *State* v. *Slater*, 98 Conn. App. 288, 908 A.2d 1097 (2006), aff'd, 285 Conn. 162, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

On November 27, 2009, the petitioner filed a petition for a writ of habeas corpus as a self-represented litigant. He subsequently obtained an attorney, who filed a nine count amended petition on February 15, 2012. The counts relevant to this appeal are paragraph 69 (k) of count seven,[5] paragraph 75 (f) of count eight, and count nine. In paragraph 69 (k) of count seven, the petitioner alleged that his trial counsel was ineffective for failing to raise the statute of limitations as an affirmative defense at trial. In paragraph 75 (f) of count eight, the petitioner alleged that his appellate counsel was ineffective for failing to raise "any claims arising from the allegation[s] in [c]ount [n]ine of [his] [p]etition." In count nine, the petitioner alleged that his constitutional right to due process was violated when the trial court applied the new twenty year statute of limitations to his sexual assault in the first degree charge, and when the trial court rejected his prearrest delay claim.

A habeas trial was held on February 21 and 22, 2013. On February 22, 2013, the habeas court, *Newson, J.*, rendered an oral judgment in favor of the respondent, the Commissioner of Correction, in part, denying all of the claims in the amended petition with the exception of the claims in count one,[6] paragraph 69 (k) of count seven, and count nine. In a memorandum of decision filed July 2, 2013, the habeas court granted the petition as to count one[7] and denied it as to paragraph 69 (k) of count seven. With respect to paragraph 69 (k) of count seven, the habeas court concluded that the petitioner's claim failed on the prejudice prong.

The petitioner subsequently filed a petition for certification to appeal the partial denial of his amended petition on July 15, 2013, which the habeas court granted on July 17, 2013. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by providing the appropriate standard of review for a challenge to a denial of a petition for a writ of habeas corpus when certification to appeal is granted. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The conclusions reached by the habeas court in its decision to dismiss a habeas petition are matters of law, subject to plenary review." (Citation omitted.) *Haywood* v. *Commissioner of Correction*, 153 Conn. App. 651, 655, 105 A.3d 238, cert. denied, 315 Conn. 908, 105 A.3d 235 (2014). "When our review is plenary, we must determine whether [the court's legal conclusions] are legally and logically correct and whether they find support in the facts set out in the court's [ruling] . . . ." (Internal quotation marks omitted.) *Council* v. *Commissioner of Correction*, 114 Conn. App. 99, 103, 968 A.2d 483, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony."

(Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

## I

We first address the petitioner's claim that the habeas court improperly rejected his claim that the failure of his trial counsel to raise the statute of limitations as an affirmative defense at trial constituted ineffective assistance.

The following additional facts are relevant to this claim. In its memorandum of decision, the habeas court concluded that the petitioner's claim that trial counsel was ineffective for failing to raise the statute of limitations as an affirmative defense for the jury's consideration failed on the prejudice prong. The habeas court found that "[i]n denying defense counsel's pretrial motion to dismiss, the trial court ruled that, the crime having been reported within five years of its occurrence, and there being DNA to identify the perpetrator, the applicable statute of limitations was . . . § 54-193b, and not the five year period set forth in § 54-193." The court further found that "it is reasonable for this court to presume that, had defense counsel made an effort to present evidence to the jury that the applicable statute of limitation was anything other than that contained in . . . § 54-193b, the trial court would have prohibited it."

The habeas court concluded: "Therefore, there is no reasonable probability to believe that there would have been a different or more favorable result for the petitioner, because it is unlikely the jury would have ever have heard evidence that a different statute of limitations applied. As such the petitioner cannot establish he was prejudiced."

We begin by stating the law regarding claims of ineffective assistance of trial counsel. "The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"With respect to the prejudice component of the

*Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 148 Conn. App. 517, 523–25, 85 A.3d 1199, cert. denied, 312 Conn. 901, 91 A.3d 908 (2014).

The petitioner argues that his trial counsel was ineffective for failing to reassert the statute of limitations claim made in the motion to dismiss as an affirmative defense at trial, waiving any right the petitioner may have had to raise issues relating to those claims on appeal. The petitioner relies on *State* v. *Coughlin*, 61 Conn. App. 90, 97, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001), arguing that it stands for the proposition that if defense counsel moves to dismiss the case and the trial court denies the motion, the defendant must still plead the statute of limitations as an affirmative defense to the jury or the issue is waived on appeal.

We agree with the habeas court's conclusion that the petitioner failed to prove prejudice. The facts underlying the court's decision in *State* v. *Coughlin*, supra, 61 Conn. App. 97, are distinguishable from the facts of this case. In *Coughlin*, this court found that the defendant had waived his statute of limitations claim, despite raising it in a pretrial motion to dismiss, because there was no evidence that it had been raised as an affirmative defense at trial. Id. In that case, however, the defendant's statute of limitations claim did not involve a dispute as to which statute of limitations applied. Rather, the claim involved whether the statute of limitations had been tolled by the factual circumstances of the case. Id. Put simply, the defendant's claim involved a factual determination for the jury. Id.

In contrast, in the present case, the petitioner's statute of limitations claim involved a dispute about which of two statutes of limitation applied. The petitioner's trial counsel argued that the application of the newly extended twenty year statute of limitations would open him to liability that did not exist at the time of the crime and therefore, violated his rights under the ex post facto clause. There were no factual determinations to be made by the jury. It was solely a legal question for

the court. See General Statutes § 52-216 ("The court shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the action to the jury, shall direct them to find accordingly. The court shall submit all questions of fact to the jury, with such observations on the evidence, for their information, as it thinks proper, without any direction as to how they shall find the facts."); Practice Book § 16-9 (same).

Further, we agree with the habeas court's analysis that in denying trial counsel's motion to dismiss, the trial court determined that the applicable statute of limitations was § 54-193b, not § 54-193 (b). It, therefore, is reasonable to presume, given that ruling, that had trial counsel attempted to present evidence to the jury that the applicable statute of limitations was anything other than § 54-193b, the trial court would have prohibited it. There is no reasonable probability that there would have been a different or more favorable result. We, therefore, conclude that the petitioner failed to show that he was prejudiced by trial counsel's not having attempted to argue a statute of limitations defense to the jury, and thus, he cannot succeed on his ineffective assistance of trial counsel claim. See *Thomas* v. *Commissioner of Correction*, 141 Conn. App. 465, 472–73, 62 A.3d 534 (failure to present evidence of prejudice fatal to ineffective assistance claim), cert. denied, 308 Conn. 939, 66 A.3d 881 (2013).

II

We now address the petitioner's claim that the habeas court improperly rejected his claim that the failure of his appellate counsel to adequately investigate his claim that he was substantially prejudiced by the more than six year delay between the incident and his arrest constituted ineffective assistance.

The following additional facts are relevant to this claim. At the hearing before the trial court on the petitioner's motion to dismiss, Judge Holden found the following facts with respect to the prearrest delay claim. The incident took place on May 6, 1997, a rape kit was collected, and then the case was closed on September 3, 1997, because the victim was uncooperative. On March 30, 2001, almost four years later, the petitioner provided a blood sample in compliance with the state sex offender registry, and on July 31, 2001, the police matched the petitioner's DNA to the victim's rape kit. The victim was contacted by the police about this new information, but was not shown a photographic array. A search and seizure warrant was executed on February 8, 2002, for a sample of the petitioner's blood, and a confirmation of the match was received on May 10, 2002. In the meantime, however, the victim died on April 4, 2002, of causes unrelated to the assault. It was not until August 18, 2003, that the police got a statement from the petitioner regarding the incident, and then

not until October 23, 2003, that an arrest warrant was issued. The petitioner was arrested on that warrant on October 27, 2003.

The trial court concluded: "The court has heard no evidence to suggest, and although I am troubled by the time line, too long a time line, I have not heard anything at all to suggest that the police did anything to put themselves in a tactical advantage. Indeed but for there being contact by the state police that there was a hit, we can say that [the state's] case remained closed as it had for six years, for at least the four years prior to that knowledge.

"Actual substantial prejudice resulting from the delay? I see none. As counsel has made certain claims in his motion regarding alibi and other issues that might have been utilized had the state in a timely manner or the police proceeded with this investigation and arrest, particularly, when they had developed [the petitioner] as a suspect almost on the very day the incident occurred. Whether they should have employed other investigative procedures to implement the arrest sooner . . . they, perhaps, could have. But, in any event, whether or not those that were employed affected any prejudice to [the petitioner's] trial, I have seen no evidence of that in this hearing nor have I seen any evidence that the delay is wholly unjustifiable. I've seen no evidence that the state intended to use this delay to gain a tactical advantage over the [petitioner]."

At the habeas trial, appellate counsel testified that he could not recall what he had reviewed in preparing the petitioner's appeal. In response to the question of whether he had reviewed trial counsel's motion to dismiss, appellate counsel testified that the motion "appears to be something I would expect I reviewed," but that he had no specific recollection of what he had reviewed. When entering its oral judgment on February 22, 2013, the habeas court denied count eight of the amended petition, finding "credible counsel's testimony that his standard appellate practice, which he believed he would have engaged in on this matter, would have been to review all transcripts, counsel's defense file and all other things in the record. Notwithstanding even his admission that he doesn't think he reviewed specifically the court file, there was no proof that counsel engaged in deficient performance or that there was any prejudice."

"To succeed on an ineffective assistance of appellate counsel claim, the petitioner must satisfy both the performance prong and the prejudice prong of *Strickland*. . . . To satisfy the prejudice prong, the petitioner must demonstrate that there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting a new trial." (Citation omitted; internal quotation marks

omitted.) *Haywood* v. *Commissioner of Correction*, supra, 153 Conn. App. 662. "[I]t is well settled that [a] reviewing court can find against a petitioner on *either* ground, whichever is easier." (Emphasis in original; internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 606, 103 A.3d 954 (2014).

The petitioner argues that it is an appellate lawyer's professional obligation to adequately investigate the entire record, court file, exhibits, and to conduct a conversation with his client. Appellate counsel cannot know what is best to include in an appellate brief without reviewing the court record and exhibits. He argues that the prearrest delay claim was a strong claim that could and should have been raised because, in comparison to the claim pursuant to *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that appellate counsel chose to raise, which would have resulted in a new trial, the prearrest delay claim would have prevented prosecution and, therefore, resulted in a judgment of acquittal for the petitioner. The petitioner argues that had his appellate counsel investigated properly and raised the prearrest delay claim on appeal, there is a reasonable probability that he would have prevailed.

"The role of due process protections with respect to pre-accusation delay has been characterized as a limited one. . . . [T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. . . . Our task is more circumscribed. We are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency . . . . The due process clause has not replaced the applicable statute of limitations . . . [as] . . . the primary guarantee against bringing overly stale criminal charges. . . .

"In order to establish a due process violation because of pre-accusation delay, the defendant must show *both* that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. . . . [P]roof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Morrill*, 197 Conn. 507, 521–22, 498 A.2d 76 (1985).

We agree with the habeas court's conclusion that the petitioner failed to prove he was prejudiced under *Strickland*. The petitioner offered no evidence at the

habeas trial that the prearrest delay claim would have been successful if pursued. "The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 175, 774 A.2d 148 (2001); see also *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 860, 33 A.3d 819 ("[m]ere allegation and speculation are insufficient"), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012). Although we acknowledge, as both the trial and habeas courts did, the lapse in time between the incident and the petitioner's arrest, we agree with the habeas court that the petitioner failed to show that he suffered actual substantial prejudice as a result of the lapse of time or that the delay was wholly unjustifiable. We, therefore, conclude that because the petitioner has failed to demonstrate that this claim had a reasonable probability of success on appeal, the petitioner has not shown that he was prejudiced by appellate counsel's failure to raise it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We conclude that the petitioner's claim as to his appellate counsel is limited to the failure to adequately investigate whether the petitioner was prejudiced by the delay between the incident and his arrest. The petitioner did not raise a claim that his appellate counsel was ineffective for failing to investigate or raise a claim as to the statute of limitations.

[2] General Statutes § 54-193 (b) provides: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) of this section, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed." We note that § 54-193 (b) was amended by No. 10-180 of the 2010 Public Acts. The changes are not relevant to this appeal. All references are to the current version of the statute.

[3] Public Acts 2000, No. 00-80, § 1, provides: "Notwithstanding the provisions of sections 54-193 and 54-193a of the general statutes, a person may be prosecuted for a violation of section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b of the general statutes not later than twenty years from the date of the commission of the offense, provided (1) the victim notified any police officer or state's attorney acting in such police officer's or state's attorney's official capacity of the commission of the offense not later than five years after the commission of the offense, and (2) the identity of the person who allegedly committed the offense has been established through a DNA (deoxyribonucleic acid) profile comparison using evidence collected at the time of the commission of the offense."

[4] We note that trial counsel made one additional argument in his motion to dismiss—the court should dismiss both charges due to insufficient evidence to justify continuing the case or placing the petitioner on trial—that is not at issue in this appeal.

[5] We note that the petitioner appears to have mislabeled the subsections in paragraph 69 of count seven by mistakenly labeling two subsections "h." The subsection at issue follows subsection j and should have been labeled "k."

[6] In count one of the amended petition, the petitioner alleged that the trial court improperly instructed the jury as to the charge of kidnapping in the first degree.

[7] The petitioner alleged that pursuant to our Supreme Court's reinterpretation of the kidnapping statutes in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), he was entitled to an instruction that the jury must find that he "had intended to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit [the underlying] crime." (Internal quotation marks omitted.) The habeas court granted the petition as to count one and ordered the petitioner's conviction for kidnapping vacated. The court found that the petitioner was entitled to habeas relief because there was a reasonable possibility that a properly

instructed jury would have reached a different result. This determination is not challenged on appeal.